***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Glenn and the briefs and arguments of the parties. The appealing parties have not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award, except with modifications regarding plaintiff's entitlement to further benefits.
 ***********
The Full Commission finds as a fact and concludes as matters of law the following, which were entered into by parties as:
 STIPULATIONS
1. That all parties are properly before the Industrial Commission and the Industrial Commission has jurisdiction over the parties and this claim. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. At all times relevant to this matter, an employer-employee relationship existed between plaintiff and defendant, and defendant was insured for workers' compensation benefits.
3. The dates of the injuries, which are the subjects of this claim, are February 7, 1996 and July 24, 1996.
4. Defendant-employer was self insured at the time of both of these incidents with Key Risk Management Services, Inc. acting as its administrator.
5. The issues to be determined from this hearing are as follows:
(a) Whether plaintiff is entitled to receive additional benefits under the North Carolina Workers' Compensation Act?
 ***********
Based upon all of the competent evidence of record the Full Commission makes the following:
 FINDINGS OF FACTS
1. Plaintiff, who has been partially blind since birth, became employed by defendant as a housekeeper in 1996.
2. Plaintiff's average weekly wage was $291.17 per week at all relevant times herein, yielding a compensation rate of $194.12 per week.
3. Plaintiff suffered admittedly compensable injuries when she slipped and fell on ice on February 7, 1996 when she injured her right knee and on July 24, 1996 when she fell down a flight of stairs injuring her left knee.
4. Plaintiff was initially treated at Kaiser Permanente and Rex Hospital. Thereafter she was seen and treated by Dr. Jeffrey K. Kobs at Raleigh Orthopaedic Clinic. Dr. Kobs diagnosed her condition as contusion and medial collateral ligament grade I-II sprain of the left knee.
5. When plaintiff did not respond to conservative treatment, Dr. Kobs performed left knee medial meniscectomy and right knee patella chondroplasty on November 6, 1996. Thereafter, plaintiff was out of work until January 28, 1997 when she returned to work initially for 8 hours per day, which was later reduced to 4 hours per day.
6. On June 4, 1997, Dr. Kobs stated that plaintiff had reached MMI with permanent work restrictions of no squatting, stooping or climbing. Plaintiff received a 5% permanent partial disability rating to each knee. Defendant-employer attempted to accommodate plaintiff's work restrictions by offering her a job as a parking attendant, but by the time plaintiff accepted this job, it was no longer available.
7. On February 24, 1998 plaintiff began to work for Fisher-Rex Sandwiches in a position within her restrictions on an assembly line making sandwiches. The average of plaintiff's earnings while working for Fisher-Rex Sandwiches is indicative of plaintiff's wage earning capacity. A Form 26 was approved by the Industrial Commission on April 20, 1999 in which plaintiff elected temporary partial benefits over permanent partial benefits. Defendant began to pay plaintiff temporary partial benefits while she was so employed. For computation purposes, plaintiff submitted payroll stubs to her attorney who in turn submitted them to the third party administrator.
8. Unbeknownst to defendant plaintiff stopped working at Fisher-Rex Sandwiches at the end of June 1999. Although numerous attempts were made to contact plaintiff through counsel, defendant was not informed until March 14, 2001 that plaintiff had not worked at Fisher-Rex Sandwiches since June 1999. Consequently, plaintiff was not paid temporary partial disability benefits after early July 1999.
9. Plaintiff was not taken out of work by any physician at the time she voluntarily left her employment with Fisher-Rex Sandwiches.
10. Plaintiff was referred to Dr. Robert Berger for evaluation by Dr. Kenneth Banks on March 3, 2001. Dr. Berger stated plaintiff likely had osteoarthritis and a histrionic personality with a secondary gain of obtaining full disability benefits. Dr. Berger prescribed Tylenol and referred plaintiff back to Dr. Banks.
11. Plaintiff underwent a second Functional Capacity Evaluation at Raleigh Orthopedic Rehabilitation Specialist on September 3, 2002 where she was found capable of light and sedentary duty. The report noted plaintiff made limited and inconsistent effort and inappropriate illness behavior.
12. The September 3, 2002 Vocational Evaluation Report based plaintiff's limitations on problems from her arthritis, sight impairment and reading related difficulties. Her knee pain was mentioned minimally. The dominant factors limiting plaintiff's ability to work in some capacity are not related to her compensable injury.
13. Plaintiff has not suffered a change of condition for the worse with regard to the injuries she sustained on February 7, 1996 and July 24, 1996.
 ***********
Based on the foregoing findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained admittedly compensable injuries by accident on February 7, 1996 and on July 24, 1996 arising out of and in the course of her employment with defendant-employer for which all temporary total disability compensation owed has been paid. N.C. Gen. Stat. § 97-29.
2. Since the Form 26 agreement reflecting the election of temporary partial benefits was a final award, plaintiff could not receive further compensation without proving that she had sustained a material change of condition. The greater weight of the evidence does not establish that plaintiff sustained a change of condition for the worse entitling her to ongoing temporary total disability compensation. N.C. Gen. Stat. § 97-47.
3. Nonetheless, as of July 1999, when payments ceased due to plaintiff's failure to cooperate and continuing thereafter for 300 weeks from February 7, 1999, plaintiff is entitled to temporary partial disability benefits pursuant to her election
4. Plaintiff is entitled to have defendant provide all medical compensation arising from this injury by accident. N.C. Gen. Stat. §§97-2(19); 97-25, 97-25.1.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant shall pay plaintiff temporary partial benefits in an amount equal to the average of what had been paid prior to her voluntary departure as of July 1999 when plaintiff voluntarily left her employment to be paid for a period of 300 weeks from February 7, 1996.
2. Defendant shall pay for all medical expenses incurred or to be incurred by plaintiff as a result of this compensable injury when bills for same have been submitted to and approved by the Industrial Commission subject to statutory limitations, for so long as such evaluations, treatments and examinations may reasonably be required to effect a cure, give relief and/or lessen plaintiff's period of disability.
3. An attorney's fee in the amount of twenty-five percent of the compensation awarded is approved for plaintiff's counsel. This fee shall be deducted from the compensation awarded to plaintiff and paid directly to counsel for plaintiff.
4. Defendant shall pay the costs of this action.
This the 14th day of December 2004.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
DCS/llc